## SOUTHERN ROUND BALE PRESS CO. v. BEHREND.    (No. 6684.)*

(Court of Civil Appeals of Texas.    Austin. Nov. 7, 1923.    Rehearing Denied Dec. 20, 1923.)

**1. Trover and conversion ⟨⟩66—Evidence of conversion held to justify directed verdict.**

In suit for conversion of a cotton press, evidence *held* to justify the court in instructing a verdict for defendant on the ground that it was insufficient to show conversion by defendant.

**2. Trover and conversion ⟨⟩34(7)—Evidence of value as junk inadmissible under pleadings alleging market value.**

Where plaintiff sued for the cash market value of a cotton press, there was no error in excluding evidence as to the reasonable market value of the press as junk within a few days of the alleged conversion.

**3. Evidence ⟨⟩474(19)—Refusing depositions to establish value of cotton press held without error.**

In suit for conversion of a cotton press, where, in depositions, witnesses stated they had never been in the county, and did not know the condition of the press as to wear and tear, nor what it could be sold for, there was no error in refusing their depositions to establish market value.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by the Southern Round Bale Press Company against F. C. Behrend. Judgment for defendant, and plaintiff perfects appeal by petition for writ of error. Affirmed.

Snodgrass & Dibrell, of Coleman, for appellant.

Baker & Weatherred, of Coleman, for appellee.

BLAIR, J. Plaintiff in error sued defendant in error for conversion at Coleman, Tex., of a certain described round bale cotton press, of the alleged reasonable cash market value of $2,500 at the time of the alleged conversion, which was on or about the 20th of June, 1917. Defendant in error answered by general demurrer and general denial. At the conclusion of the evidence the court instructed the jury to return a verdict for defendant in error, which was accordingly done, and upon such verdict the court based its judgment for defendant in error, to which action of the court plaintiff in error then and there excepted, and gave notice of appeal. The appeal is perfected by a petition for writ of error.

[1] The court correctly instructed a verdict for defendant in error upon the ground that there was no testimony offered showing a conversion of the property by defendant in error. The burden of proof was upon plaintiff in error to prove that the defendant in error converted the alleged round bale press. The only testimony upon the issue is, in substance, as follows:

H. J. O'Hair testified as follows:

"I don't know who moved that press up there on the railroad track. I do not know at all of my own knowledge who moved it. It was not moved up there before the Santa Fé built through there. I don't know whether Mr. Rose or the Round Bale people had it moved. I didn't count the pieces that were left up there or that were left down here. I don't think there is any of it up there now. I don't know whether there is any of it up there by the stockpens. I haven't looked up there for it. When I said it was up there, I didn't mean scattered along the railroad right of way; this press I understand you are talking about—the American press was all put in a pile in a house or shed; it was all under one roof at that time. I am talking about the American press. We had the Reagan. That press, the last time I saw it, was not scattered much. That place was open there—anybody could go and get it there. A lot of Jews did come into this country at that time buying junk; a lot of people from Houston, San Antonio, and Austin were buying junk, anything they could get; yes; and a great many people were selling junk. In my conversation with Mr. Behrend I did give Mr. Behrend the name and address of the Reagan Company and the American Company. The press was carried up there about 12 or 15 years ago. It is a fact that the Round Bale Press people never were a success here. There hasn't been a round bale press used in this

county for years. There has not been a round bale press sold in this county to my knowledge in 15 years; I guess it has been about 15 years since they took them out. * * * The last time I noticed that press, about the time Mr. Behrend had been talking to me, there was some parts missing; I could not tell you how many; I don't know whether they were taken from it or just rolled out of the house, there was some of it lying around there. I should say one-half dozen pieces. * * * I gave Mr. Behrend the address of the Reagan Round Bale people. I told him about the Reagan people having a press up there."

John Fossett testified as follows:

"As a side line I sometime used to engage in the junk business. I do not know about any round bale presses here at Coleman. I hauled some junk for Mr. Behrend in 1917. I hauled some junk up there when the railroad company moved it around those tracks. I got some junk on the north side of the railroad, and some on the south side. I got that junk on the north-side all up and down the railroad, from the stockpens, and there was some I didn't get, up here where they used to have a compress—the compress way down the town yonder. The stuff I moved from near the stockpens that was just junk iron, is all I can tell you. Some if it was pretty heavy. I had to break up some pieces of it. I got everything I seen there at the stockpens and hauled it down here for Mr. Behrend. I loaded some of it in the car—he had plenty of junk there. I could not tell you whether that was in 1917; you ought to know. I did get the junk all right. It has been a pretty good while ago; maybe my memory is not very good on it. It has been four or five years ago, I think. It might have been longer. * * * I didn't get any great big round thing from way up yonder about the stockyards. Q. You never got in this car big round things like that at the compress? A. Yes, sir; I got I think, two or three. I got some of them on the south side of the railroad track and some on the north side. The donkeys I hauled that stuff down here with were worth more than 30 cents apiece. I couldn't move 20,000 pounds with them—I could not load it. I didn't handle any presses weighing 20,000 pounds or anything like 20,000 pounds. As to that stuff being scattered promiscuously all up and down the railroad from the stockpens up both sides of the railroad—I don't know the meaning of 'promiscuously'; it was scattered all up and down both sides of the railroad. I got a load of junk up there—that is what it was. * * *

That stuff I got on the north side of the railroad was pretty close to the old tank. All that stuff I got wasn't piled up at the tank. What I got was scattered on both sides of the railroad from the stockpens on down this way. I got all the stuff I could handle."

A trial court is only authorized to instruct a verdict when testimony offered is of such nature that reasonable minds could only come to one conclusion; and, based upon the testimony as set forth above, we are of the opinion that all men of reasonable minds would come to the conclusion that it was not proved that defendant in error converted the property, and especially so since the plaintiff in error placed the defendant in error upon the stand, and did not ask if he took the property in question. We do not hold that he was required to ask this question.

[2] Appellant's fourth assignment is that the trial court erred in excluding the testimony of the defendant in error as to what the reasonable market value of the press at Coleman, on June, 1917, as junk, would be. Although it is not necessary to pass upon this question, since we have held there is no proof showing that the defendant in error converted the property, in passing we will say, however, that there was certainly no error here, since plaintiff in error sued for the cash market value of the press only, and not for its value as junk.

[3] Appellant's fifth, sixth, seventh, and eighth propositions all complain of the action of the trial court in refusing to permit depositions of two witnesses to be read, by which the market value of the press was sought to be established. Also, aside from the proposition that this would not be error, in view of the fact that we have held that plaintiff in error failed to establish the conversion of the property by defendant in error, each of these witnesses testified that they had never been in that county, and did not know the condition of the press as to its wear and tear, nor what it could be sold for; therefore it was not error to exclude their testimony.

We find no error in the judgment of the trial court, and it is affirmed.

Affirmed.